**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

|  |  |  |
|---|---|---|
| SHIVA STEIN, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:21-cv-7364 |
| | : | |
| v. | : | |
| | : | **COMPLAINT FOR VIOLATIONS OF** |
| CORNERSTONE ONDEMAND, INC., | : | **SECTIONS 14(a) AND 20(a) OF THE** |
| PHILIP S. SAUNDERS, ADAM L. MILLER, | : | **SECURITIES EXCHANGE ACT OF** |
| RICHARD HADDRILL, NANCY | : | **1934** |
| ALTOBELLO, FELICIA ALVARO, DEAN | : | |
| CARTER, ROBERT CAVANAUGH, | : | **JURY TRIAL DEMANDED** |
| JOSEPH OSNOSS, STEFFAN C. | : | |
| TOMLINSON, and SARA MARTINEZ | : | |
| TUCKER, | : | |
| | | |
| Defendants. | | |

--------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Cornerstone OnDemand, Inc. ("Cornerstone or the "Company") and the members Cornerstone board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Cornerstone by Clearlake Capital Group, L.P. ("Clearlake") and its affiliates.

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on August 30, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Sunshine Software Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Sunshine Holdings, Inc. ("Parent"), will merge with and into Cornerstone with Cornerstone surviving the merger and becoming a wholly owned subsidiary of Parent (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Cornerstone common share issued and outstanding will be converted into the right to receive $57.50 in cash (the "Merger Consideration"). Parent and Merger Sub are both affiliates of Clearlake.

3.      As discussed below, Defendants have asked Cornerstone stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Qatalyst Partners LP ("Qatalyst") and Centerview Partners LLC ("Centerview" and together with Qatalyst, the "Financial Advisors") in support of their fairness opinions, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Cornerstone stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

### JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Cornerstone is traded on the NASDAQ Stock Exchange, headquartered in this District. In addition, Cornerstone's proxy solicitor for the purposes of facilitating the Proposed Transaction, MacKenzie Partners, Inc., is also headquartered in this District.

### PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Cornerstone common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Phillip S. Saunders has served as a member of the Board since 2020 and is the Chief Executive Officer of the Company.

11.     Individual Defendant Adam L. Miller has served as a member of the Board since 1999 and is the Company's Founder and Co-Chair of the Board.

12.     Individual Defendant Richard Haddrill has served as a member of the Board since 2018 and is the Co-Chair of the Board.

13.     Individual Defendant Nancy Altobello has served as a member of the Board since 2020.

14.     Individual Defendant Felicia Alvaro has served as a member of the Board since 2020.

15.     Individual Defendant Dean Carter has served as a member of the Board since 2017.

16.     Individual Defendant Robert Cavanaugh has served as a member of the Board since 2015.

17.     Individual Joseph Osnoss has served as a member of the Board since 2017.

18.     Individual Defendant Steffan C. Tomlinson has served as a member of the Board since 2017.

19.     Individual Defendant Sara Martinez Tucker has served as a member of the Board since 2021.

20.     Defendant Cornerstone is incorporated in Delaware and maintains its principal offices at 1601 Cloverfield Blvd., Suite 620 South, Santa Monica, California 90404.   The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "CSOD."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.**     **The Proposed Transaction**

23.     Cornerstone, together with its subsidiaries, provides learning and people development solutions as software-as-a-service worldwide. Its enterprise people development solutions comprise learning solutions, which provide learning management software to scale with the organization and support compliance, knowledge sharing, and employee-driven development training to close skills gaps; content solution, which provides learning content from its own studios and various quality partners; performance solutions, which provide tools to manage goal setting, performance reviews, competency assessments, compensation management, and succession planning; careers solution, which helps employees understand how to get from their current position to future strategic roles with continuous feedback, goal setting, development plans, career exploration, and engagement survey tools; recruiting solutions, which help organizations to attract, hire, and onboard the right employees; and HR solution, which provides an aggregated view of employee data with workforce planning, self-service management, and compliance reporting capabilities. The Company also offers professional services, including application configuration, system integration, business process re-engineering, change management, and training. Cornerstone sells its software, content, and services directly through its sales force and indirectly through its domestic and international network of distributors. It serves business services, financial services, healthcare, pharmaceuticals, insurance, manufacturing, retail, and technology industries. Cornerstone was incorporated in 1999 and is headquartered in Santa Monica, California.

24.     On August 5, 2021, Cornerstone and Clearlake jointly announced that they had entered into a proposed transaction:

> SANTA MONICA, Calif.--(BUSINESS WIRE)--Cornerstone OnDemand, Inc. (NASDAQ: CSOD), a global leader in talent management software, today announced it has entered into a

definitive agreement to be acquired by Clearlake Capital Group, L.P. (together with certain of its affiliates, "Clearlake"), a leading private equity firm. Under the terms of the agreement, Clearlake will acquire the outstanding shares of Cornerstone common stock for $57.50 per share in cash. The transaction has an enterprise value of approximately $5.2 billion.

The $57.50 per share purchase price represents a premium of approximately 31% to Cornerstone's unaffected closing stock price on June 1, 2021, the last full trading day prior to Clearlake filing a Schedule 13D in connection with the Company's strategic review process, and a 40% premium to the Company's unaffected LTM VWAP. Upon completion of the transaction, Cornerstone will become a private company with the flexibility and resources to continue to provide market leading, talent management software-as-a-service ("SaaS") solutions. Additionally, Cornerstone will benefit from the operating capabilities, capital support and deep sector expertise of Clearlake and their strong track record with software platform investments.

Phil Saunders, Chief Executive Officer of Cornerstone, said, "Clearlake's investment reflects their confidence in our talented people, the power of our SaaS solutions and our value proposition for our customers. With this transaction, we plan to continue to pursue new software capabilities that advance our customers' efforts to optimize workforce agility, transform skill development, deliver personalized, engaging growth experiences, and align their organizations around a shared definition of success. We're thrilled to welcome Clearlake as a partner that appreciates the impact our SaaS solutions have on the lives of people at work and our customer-centric philosophy as we accelerate our innovation."

"This transaction represents another major milestone in Cornerstone's amazing journey. As a private company with Clearlake as a partner, Cornerstone will be even better positioned to innovate, to capitalize on our market opportunities and to extend our platform," said Adam Miller, Founder and Co-Chairman of the Board. "The added significant strategic flexibility and financial resources will create new opportunities for our employees, provide our clients with more capabilities to empower their people and enable us to help millions more people realize their potential."

Richard Haddrill, Co-Chairman of the Board, said, "Today's announcement is the culmination of a robust strategic review process conducted by the Board over the past several months. This

process considered our standalone opportunities and solicited and inbound interest from a significant number of parties, including potential strategic and financial partners. We are very pleased to reach this agreement, which provides our stockholders with compelling, certain cash value and positively reflects the operational and strategic synergies achieved through Cornerstone's prior acquisition of Saba."

"We have long admired Cornerstone's leading talent management SaaS solutions and the Company's mission to help customers modernize the learning and development experience for their employees," said Behdad Eghbali, Co-Founder and Managing Partner at Clearlake. "We believe there is a significant opportunity to strategically position Cornerstone in the market as a leading platform and industry consolidator, and we look forward to partnering with the management team to drive value through both organic growth acceleration and inorganic transformation."

"With a compelling suite of market-leading SaaS solutions, and history of product innovation, we believe Cornerstone is well positioned in the growing and rapidly evolving talent management market," said Prashant Mehrotra, Partner, and Paul Huber, Principal at Clearlake. "We are excited to leverage Clearlake's O.P.S.® framework to help the Company strengthen its strategic growth plans and accelerate the pace of execution."

"We have developed deep admiration and respect for Cornerstone over the years, in particular during our ownership of Saba Software. We are thrilled to support the Company's outstanding management team and employees to extend Cornerstone's leadership as the pre-eminent next-generation talent management software platform," said David Fishman, Managing Director and Head of Private Equity, and Andy Fishman, Managing Director at Vector Capital.

**Timing and Approvals**

The transaction, which was unanimously approved by Cornerstone's Board of Directors, is not subject to a financing condition and is expected to close in the second half of 2021, subject to customary closing conditions, including the receipt of regulatory approvals and approval by a majority of Cornerstone stockholders. Certain stockholders, including Clearlake, representing 15.65% of the Company's outstanding shares have agreed to vote their shares in favor of the transaction.

Upon the completion of the transaction, Cornerstone will become a privately held company and shares of Cornerstone common stock will no longer be listed on any public market.

**Second Quarter 2021 Financial Results and Conference Call**

In a separate release, Cornerstone today announced its second quarter 2021 results. The press release is available on the "Investor Relations" section of the Cornerstone website at https://investors.cornerstoneondemand.com/.

In light of the announced transaction with Clearlake, Cornerstone will not hold its earnings conference call previously scheduled for today, August 5, 2021 at 5 p.m. ET.

**Advisors**

Qatalyst Partners and Centerview Partners LLC are serving as financial advisors to Cornerstone, and Cooley LLP is serving as legal counsel.

Morgan Stanley, Rothschild & Co., J.P. Morgan, Goldman Sachs, BoA Securities, Barclays, Jefferies and William Blair are acting as financial advisors to Clearlake. Sidley Austin LLP is serving as legal counsel to Clearlake in the connection with the acquisition and debt financing.

J.P. Morgan, BoA Securities, Ares, Golub, Antares, Barclays, Blue Owl, BMO Capital Markets, BNP Paribas, Credit Suisse, Goldman Sachs and Jefferies are providing the debt financing for the transaction.

* * *

25.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Cornerstone's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     <u>The Materially Incomplete and Misleading Proxy Statement</u>

26.     On August 30, 2021, Cornerstone filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

<u>*Omissions and/or Material Misrepresentations Concerning Cornerstone Financial Projections*</u>

27.     The Proxy Statement fails to provide material information concerning financial projections by Cornerstone management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Cornerstone management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, Non-GAAP Operating Income, Levered Free Cash Flow, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning the Financial Advisors' Financial Analysis*

32.     With respect to Qatalyst's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the implied net present value of a corresponding terminal value of the Company;  (ii) the inputs and assumptions underlying the use of a range of multiples of fully diluted enterprise value to next-twelve-months estimated unlevered free cash flow of 14.0x to 23.0x; (iii) the inputs and assumptions underlying the range of discount rates ranging from 8.0% to 12.0%; (iv) the Company's estimated weighted average cost of capital; and (v) the total number of fully diluted shares outstanding as of August 2, 2021.

33.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the implied per share equity range for the shares of Cornerstone common stock; (ii) the inputs and assumptions underlying the range of discount rates ranging from 8.25% to 10.00%; (iii) the Company's weighted average cost of capital; (iv) the implied terminal value of Cornerstone; (v) the inputs and assumptions underlying the use of the range of unlevered free cash flow multiples from 15.0x to 20.0x; and (vi) the total number of fully diluted shares outstanding as of August 2, 2021.

34.     With respect to Centerview's *Analyst Price Targets Analysis*, the Proxy Statement fails to disclose: (i) the Wall Street research analysts observed; (ii) the stock price targets for the Company.

35.     With respect to the Centerview's *Precedent Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the acquisitions observed by Centerview; and (ii) the premia paid in those transactions.

36.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial

analysis that were prepared by the Financial Advisors and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

42.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     The Individual Defendants acted as controlling persons of Cornerstone within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Cornerstone, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Cornerstone, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Cornerstone, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.


Dated: September 1, 2021                              **MELWANI & CHAN LLP**

                                        By:    /s *Gloria Kui Melwani*
                                               Gloria Kui Melwani (GM5661)
                                               1180 Avenue of Americas, 8th Fl.
                                               New York, NY 10036
                                               Telephone: (212) 382-4620
                                               Email: gloria@melwanichan.com

                                               *Attorneys for Plaintiff*